No. 26-1112

# In the United States Court of Appeals for the Eighth Circuit

WANDA BRANDON; ANDREW CRAIG; ALICE CROCKETT; AMIRA HERNDON; JOHNNNIE MCCREARY; TAMMY O'CONNOR; PAUL PERNICIARO; SHENICQUEL SPOTTS; JAMES APPLE; ANTHONY COMPARATO; MARC INGRAM; ANNE GILLESPIE; JEFFERY MCCAW, *Plaintiffs-Appellees*,

MICHELLE JOHNSON; PRECIOUS MABRY; ANGEL SCOTT; SAIDIA MCDANIEL; ROCHELLE PAGE; LISA SCAILS-DANSBERRY; JEAN SLAVEN; QUINTON STEWART, *Plaintiffs*,

v.

BOARD OF EDUCATION OF THE CITY OF ST. LOUIS, *Defendant-Appellant*, KELVIN R. ADAMS; CHARLES K. BURTON, *Defendants*.

On Appeal from the United States District Court
for the Eastern District of Missouri
Civil Case No. 4:22-cv-00635, Hon. Stephen R. Clark

## CORRECTED BRIEF OF *AMICUS CURIAE* THE BECKET FUND FOR RELIGIOUS LIBERTY IN SUPPORT OF PLAINTIFFS-APPELLEES AND AFFIRMANCE

ANDREA R. BUTLER
LUKE W. GOODRICH
TIMOTHY P. KOWALCZYK
THE BECKET FUND FOR
  RELIGIOUS LIBERTY
1919 Pennsylvania Ave., NW
  Suite 400
Washington, DC 20006
(202) 955-0095
*abutler@becketfund.org*

*Counsel for* Amicus Curiae

# RULE 26.1 DISCLOSURE STATEMENT

The Becket Fund for Religious Liberty has no parent corporations and issues no shares of stock.

/s/ *Andrea R. Butler*
Andrea R. Butler

# TABLE OF CONTENTS

**Page**

RULE 26.1 DISCLOSURE STATEMENT.................................................i

TABLE OF AUTHORITIES...........................................................iv

INTEREST OF AMICUS CURIAE.......................................................1

INTRODUCTION.....................................................................2

STATEMENT OF FACTS...............................................................4

    A. The Plaintiffs and Their Religious Beliefs .....................................4

    B. The District's Vaccine Policy................................................5

ARGUMENT .........................................................................7

I. The District's vaccine policy is subject to strict scrutiny
because it is not generally applicable..............................................7

    A. The District favored secular conduct over religious conduct
by approving all medical exemptions and
denying all religious exemptions. ................................................7

        1. Circuits are split on whether medical exemptions
render a vaccine policy not generally applicable. .......................9

        2. The cases that justify preferential treatment for
medical exemptions are incorrect...........................................12

        3. The District's policy is not generally applicable
under *Tandon*. ...............................................................16

    B. The District's vaccine policy is not generally applicable
because it allowed for individualized exemptions. ........................19

    C. The District's vaccine policy is not subject to rational
basis review under *Jacobson*. .....................................................21

II.  The District's challenges to the sincerity, accuracy, and religiosity of Plaintiffs' objections fail. ......................................... 22

III. The District failed to show that accommodating Plaintiffs would have been an undue hardship. ............................. 27

CONCLUSION ................................................................................. 29

CERTIFICATE OF COMPLIANCE ...................................................... 30

CERTIFICATE OF SERVICE ............................................................. 31

# TABLE OF AUTHORITIES

<b>Page(s)</b>

**Cases**

*Agudath Israel of Am. v. Cuomo,*
141 S. Ct. 889 (2020)............................................................................ 1

*Bazinet v. Beth Isr. Lahey Health,*
113 F.4th 9 (1st Cir. 2024)............................................................ 26, 28

*BLinC v. Univ. of Iowa,*
991 F.3d 969 (8th Cir. 2021)............................................................ 18

*Brokken v. Hennepin County,*
140 F.4th 445 (8th Cir. 2025) ...............................................24-25, 26

*Brox v. Woods Hole, Martha's Vineyard & Nantucket
Steamship Auth.,*
83 F.4th 87 (1st Cir. 2023)................................................................ 10

*Brox v. Woods Hole, Martha's Vineyard & Nantucket
Steamship Auth.,*
164 F.4th 37 (1st Cir. 2026)........................................................ 10, 15

*Burwell v. Hobby Lobby Stores,*
573 U.S. 682 (2014).......................................................................... 25

*Carter v. Loc. 556, Transp. Workers Union of Am.,*
156 F.4th 459 (5th Cir. 2025) .......................................................... 28

*Church of Lukumi Babalu Aye v. City of Hialeah,*
508 U.S. 520 (1993).......................................................................... 13

*Dahl v. Bd. of Trs. of W. Michigan Univ.,*
15 F.4th 728 (6th Cir. 2021) ............................................................ 20

*Detwiler v. Mid-Columbia Med. Ctr.,*
156 F.4th 886 (9th Cir. 2025) .......................................................... 27

*Doe v. San Diego Unified Sch. Dist.*,
   19 F.4th 1173 (9th Cir. 2021) ................................................ 10, 11, 12

*Does 1-11 v. Bd. of Regents of Univ. of Colo.*,
   100 F.4th 1251 (10th Cir. 2024) ...................................... 10, 14, 18, 21

*Does 1-3 v. Mills*,
   142 S. Ct. 17 (2021)............................................................... 15, 20

*Does 1-6 v. Mills*,
   16 F.4th 20 (1st Cir. 2021).............................................................. 10

*Fellowship of Christian Athletes v. San Jose
   Unified Sch. Dist.*,
   82 F.4th 664, 694 (9th Cir. 2023) ................................................. 19

*Finn v. Humane Soc'y of U.S.*,
   160 F.4th 92 (4th Cir. 2025) .......................................................27

*Fulton v. City of Philadelphia*,
   593 U.S. 522 (2021)....................................................... *passim*

*Gonzales v. O Centro Espirita Beneficente
   Uniao do Vegetal*,
   546 U.S. 418 (2006)............................................................15-16

*Groff v. DeJoy*,
   600 U.S. 447 (2023).....................................................................27

*M.A. ex rel. H.R. v. Rockland Cnty. Dep't of Health*,
   53 F.4th 29 (2d Cir. 2022)............................................................13

*Health Freedom Def. Fund v. Carvalho*,
   148 F.4th 1020 (9th Cir. 2025) .....................................................22

*Hebrew v. Tex. Dep't of Crim. Just.*,
   80 F.4th 717 (5th Cir. 2023) .........................................................28

*Hedican v. Walmart Stores E.*,
   142 S. Ct. 1357 (2022)....................................................................1

*Heights Apartments, LLC v. Walz,*
30 F.4th 720 (8th Cir. 2022) ...................................................... 22

*Hernandez v. Comm'r,*
490 U.S. 680 (1989) ........................................................... 22, 25

*Holt v. Payne,*
85 F.4th 873 (8th Cir. 2023) ...................................................... 23

*Jacobson v. Massachusetts,*
197 U.S. 11 (1905) .................................................................. 21

*Kale v. Aero Simulation,*
139 F.4th 684 (8th Cir. 2025) .................................................... 25

*Kane v. De Blasio,*
19 F.4th 152 (2d Cir. 2021) ...................................................... 21

*Kennedy v. Bremerton Sch. Dist.,*
597 U.S. 507 (2022) ................................................................... 7

*Love v. Reed,*
216 F.3d 682 (8th Cir. 2000) .................................................... 23

*Lowe v. Mills,*
68 F.4th 706 (1st Cir. 2023) ........................................... 9, 10, 17

*Lucky v. Landmark Med. of Mich.,*
103 F.4th 1241 (6th Cir. 2024) ................................................ 27

*Mahmoud v. Taylor,*
606 U.S. 522 (2025) ................................................................. 16

*Murphy v. Mo. Dep't of Corr.,*
372 F.3d 979 (8th Cir. 2004) .................................................... 23

*Naylor v. County of Muscatine,*
151 F.4th 973 (8th Cir. 2025) ............................................. 27, 28

*Passarella v. Aspirus,*
108 F.4th 1005 (7th Cir. 2024) ........................................... 26, 27

*Perry v. Marteney,*
172 F.4th 315 (4th Cir. 2026) ...................................................... 11, 15

*Ringhoefer v. Mayo Clinic, Ambulance,*
102 F.4th 894 (8th Cir. 2024) ...........................................................26

*Rolovich v. Wash. State Univ.,*
No. 25-761 (9th Cir.) ..................................................................... 1

*Roman Catholic Diocese of Brooklyn v. Cuomo,*
592 U.S. 14 (2020).................................................................... 21, 22

*In re Rutledge,*
956 F.3d 1018 (8th Cir. 2020)............................................................22

*Singh v. Berger,*
56 F.4th 88 (D.C. Cir. 2022) ........................................................... 1

*Spivack v. City of Philadelphia,*
109 F.4th 158 (3d Cir. 2024).......................................... 11, 12, 15, 21

*Tandon v. Newsom,*
593 U.S. 61 (2021)...................................................................... *passim*

*Thomas v. Rev. Bd.,*
450 U.S. 707 (1981)............................................................................24

*Vetter v. Farmland Indus.,*
120 F.3d 749 (8th Cir. 1997)............................................................26

*We The Patriots USA v. Hochul,*
17 F.4th 266 (2d Cir. 2021)....................................................... *passim*

*Wright v. Honeywell Int'l,*
148 F.4th 779 (5th Cir. 2025) ..........................................................27

**Statutes**

42 U.S.C. § 2000e ...............................................................................27

**Other Authorities**

Douglas Laycock & Steven T. Collis, *Generally
Applicable Law and the Free Exercise of Religion*,
95 Neb. L. Rev. 1 (2016)......................................................................14

## INTEREST OF AMICUS CURIAE[1]

The Becket Fund for Religious Liberty is a non-profit, nonpartisan law firm dedicated to protecting the free expression of all religious traditions. Becket has represented agnostics, Buddhists, Christians, Hindus, Jews, Muslims, Santeros, Sikhs, and Zoroastrians, among others, in lawsuits across the country. It regularly litigates cases involving the scope of the Free Exercise Clause, including in the COVID-19 context, and employment disputes involving religious practices. *See, e.g.*, *Fulton v. City of Philadelphia*, 593 U.S. 522 (2021); *Agudath Israel of Am. v. Cuomo*, 141 S. Ct. 889 (2020); *Hedican v. Walmart Stores E.*, 142 S. Ct. 1357 (2022); *Rolovich v. Wash. State Univ.*, No. 25-761 (9th Cir.); *Singh v. Berger*, 56 F.4th 88 (D.C. Cir. 2022).

Becket is interested in this appeal because it presents important questions of how the First Amendment and Title VII apply in the context of mandatory vaccine policies. Such policies became commonplace in response to COVID-19, creating widespread conflicts for religious objectors who could not in good conscience take the vaccine. Those conflicts have now divided federal circuit courts and risk distorting the First Amendment and Title VII, to the detriment of religious liberty for people of all

---

[1] This brief is accompanied by a motion for leave for its filing. Fed. R. App. P. 29(a)(2). No counsel for a party authored this brief in whole or in part, and no person other than *Amicus*, its members, or its counsel made a monetary contribution to fund the brief's preparation or submission.

faiths. Becket offers this brief to assist the Court in working through the divisive and sometimes politically fraught issues to provide consistent, meaningful protections for religious freedom.

**INTRODUCTION**

This case asks whether religious believers can be dismissed from their jobs because their sincerely held religious beliefs do not allow them to receive certain vaccines. Following the COVID-19 pandemic, this issue has generated extensive litigation, resulting in significant uncertainty about Title VII protections for religious employees and a circuit split on the meaning of the Free Exercise Clause. This brief focuses on three key points that support affirming the judgment below.

*First*, the District's vaccine policy is subject to strict scrutiny under the Free Exercise Clause because it is not generally applicable. Under the Supreme Court's decision in *Tandon v. Newsom*, a law is not generally applicable if it treats any comparable secular activity more favorably than religious exercise. Here, the District's vaccine policy did just that by allowing employees to remain unvaccinated for medical but not religious reasons. Despite *Tandon*, circuits are split on whether granting medical exemptions, but not religious ones, renders a vaccine mandate not generally applicable. But the circuits upholding differential treatment of medical and religious exemptions have misapplied *Tandon* and given short shrift to the First Amendment; this Court should reject their approach.

Strict scrutiny also applies under *Fulton v. City of Philadelphia,* which holds that a policy is not generally applicable when it gives government officials discretion to grant exemptions based on a case-by-case assessment of reasons for an individual's conduct. Here, the District's policy does just that—authorizing government officials to make discretionary decisions on a case-by-case basis favoring medical reasons for remaining unvaccinated over religious ones. Several circuits have held that such discretionary vaccine policies trigger strict scrutiny, and this Court should do the same.

*Second,* the District's arguments about the sincerity, religiosity, and accuracy of Plaintiffs' religious beliefs are meritless. While civil courts can of course inquire into sincerity and religious motivation, those issues are quintessential factual matters for the jury. And the District has offered no basis for disturbing the jury's verdict here. Worse, the District's arguments about the accuracy of Plaintiffs' beliefs invite this Court to inquire into religious questions of moral complicity that the Supreme Court has ruled off limits. This Court has already ruled that beliefs like Plaintiffs' can be protected as religious under federal law, and the District provides no reason to depart from those rulings.

*Third,* the District's undue hardship arguments fail. Following the Supreme Court's decision in *Groff v. DeJoy,* undue hardship is a "fact-intensive" inquiry rarely appropriate for resolution as a matter of law. Here, the District did not come close to meeting that burden.

The promise of the First Amendment and Title VII is that no believer should have to choose between the dictates of her conscience and her job. These constitutional and statutory commitments are a bulwark against religious discrimination in the workplace—even in times of public health uncertainty. This Court should affirm.

## STATEMENT OF FACTS

### A. The Plaintiffs and Their Religious Beliefs

Plaintiffs are current and former teachers who worked for the St. Louis Public School District. Plaintiffs taught a variety of courses at different grade levels throughout the city. *See* R.Doc.124 at 1-5. Many taught for the District for decades. *Id.*

Plaintiffs are all also religious believers of various faiths, including Baptist, Catholic, Pentecostal, and Rastafarian, among others. *E.g.*, R.Doc.361 at 43; R.Doc.362 at 204; R.Doc.363 at 77, 206. Based on the teachings of their various faith traditions, Plaintiffs hold sincere religious beliefs that prevent them from taking the COVID-19 vaccine. Several Plaintiffs objected to the vaccines because they were developed using cell lines taken from aborted fetal stem cells; they believe that taking the vaccine would make them complicit in abortion. *See, e.g.*, R.Doc.358 at 30; R.Doc.360 at 97; R.Doc.363 at 78-82. Other Plaintiffs objected based on their religious beliefs that God created their bodies as temples of the Holy Spirit and that taking the vaccine would illicitly interfere with God's creation. *See, e.g.*, R.Doc.360 at 36-37; R.Doc.361 at 43-44.

4

## B. The District's Vaccine Policy

In August 2021, the District issued Policy 4624, which mandated that employees receive the COVID-19 vaccine by October 15, 2021, or else "be placed on unpaid leave" and "subject to discipline, up to and including termination." Add.6, R.Doc.128-4 at 1. The policy allowed employees to request an exemption if their "sincerely held religious beliefs, observances, or practices … conflict with getting vaccinated" or "on a case-by-case basis for a medical condition that is a contraindication to the COVID-19 vaccine." Add.7, R.Doc.128-4 at 2.

Despite purporting to offer religious exemptions, the District denied every religious exemption request it received, including Plaintiffs'; it also granted every medical exemption request it received.

Annamaria Liu, the District employee tasked with reviewing exemption requests, reviewed each of the 198 religious exemption requests "individually" and denied them on the basis that accommodating Plaintiffs it would have caused an undue hardship. R.Doc.365 at 200-01. The District denied Plaintiffs' exemption requests regardless of the vaccination rates at each school, whether Plaintiffs taught students old enough to be vaccinated, and whether qualified teachers were available to take over Plaintiffs' classes. *See id.* at 80-81, 91, 219, 221.

The District also reviewed each of the 48 medical exemption requests individually and granted all of them. *Id.* at 324. Liu reviewed the reli-

gious exemption requests to determine whether any of them also contained medical reasons for exemption; if so, she followed up with those employees to ensure they submitted the necessary paperwork to receive a medical exemption. *Id.* at 324, 342-44. For individuals granted medical exemptions, the District held "interactive meetings" and provided twice-weekly testing and contact tracing. *Id.* at 186-190, 325-26.

When Plaintiffs did not receive the vaccine by October 15, each one was placed on unpaid leave or terminated. *See, e.g.*, R.Doc.358 at 214-215; R.Doc.361 at 98. In total, the District suspended or terminated 121 employees over its vaccine mandate. R.Doc.365 at 95-96. The District made this decision despite significant teacher shortages at the time. *Id.* at 217.

For some of Plaintiffs' classes, the District brought in substitutes who were not trained in their subject areas. *See, e.g.*, R.Doc.362 at 139. Other classes and programs were canceled entirely. For example, Alice Crockett's elementary theater program was suspended. R.Doc.360 at 62. Andrew Craig's aviation program was canceled, as there were no substitutes with the necessary certifications. R.Doc.361 at 155, 186-87. And Tammy O'Connor's students could not receive dual credit for her world history classes, since the substitute lacked a master's degree. R.Doc.363 at 76.

Several months later, in January 2022, the District notified Plaintiffs that their religious accommodations would be granted and requested

they return to work. R.Doc.365 at 211. It did not provide compensation for Plaintiffs' unpaid leave. *See, e.g.*, R.Doc 358 at 224-25.

## ARGUMENT

### I. The District's vaccine policy is subject to strict scrutiny because it is not generally applicable.

Under the Free Exercise Clause, strict scrutiny applies when the government burdens the plaintiff's "sincere religious practice pursuant to a policy that is not neutral or generally applicable." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 525 (2022) (cleaned up). The District's vaccine policy is not generally applicable for two distinct reasons. First, the District favored secular conduct over comparable religious conduct by granting all requested medical exemptions while denying all religious exemptions. Second, the District retained discretion to grant or deny exemptions on an individualized, discretionary basis. On either ground, the district court properly applied strict scrutiny.

### A. The District favored secular conduct over religious conduct by approving all medical exemptions and denying all religious exemptions.

A law is not generally applicable "if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Fulton*, 593 U.S. at 534. This rule is strict: It applies if the government "treat[s] *any* comparable secular activity more favorably than religious exercise." *Tandon v. Newsom*, 593 U.S. 61, 62

(2021). Comparability is assessed based on "the risks various activities pose, not the reasons why" the activities are undertaken. *Id.*

The Supreme Court's analysis in *Tandon* illustrates how this rule works. There, plaintiffs challenged California's COVID-19 restrictions, which prohibited at-home religious gatherings of more than three households. *Id.* at 63-64. California argued that the restrictions were generally applicable because they imposed "a blanket restriction on at-home gatherings of all kinds, religious and secular alike." *Id.* at 65 (Kagan, J., dissenting). But the Supreme Court disagreed, explaining that the restrictions still "treat[ed] some comparable secular activities more favorably than at-home religious exercise"—such as allowing gatherings in "hair salons, retail stores, personal care services, movie theaters, private suites at sporting events and concerts, and indoor restaurants." *Id.* at 63. Crucially, the Court held that these activities were comparable not because of "the reasons why people" engage in them, but because of the comparable "risks [they] pose" to the government's interests—namely, they "presented similar risks" of "contribut[ing] to the spread of COVID–19." *Id.* at 62.

Here, the District's policy is not generally applicable because it treats secular conduct (declining the vaccine for medical reasons) more favorably than religious conduct (declining the vaccine for religious reasons), even though both actions pose similar risks of spreading COVID-19. The District's reliance on contrary out-of-circuit cases is unavailing.

8

### 1. Circuits are split on whether medical exemptions render a vaccine policy not generally applicable.

Federal circuit courts have split over whether a vaccine mandate is generally applicable when it allows for medical but not religious exemptions. On one side, the First and Tenth Circuits have correctly recognized that medical exemptions undercut general applicability by treating secular conduct more favorably than religious conduct. The Second, Third, Fourth, and Ninth Circuits, and a conflicting decision from the First Circuit, have concluded the opposite. But these latter decisions misapply *Tandon*.

First, the correct reasoning: The First Circuit, applying *Tandon*, held that religious objectors stated a free exercise claim because the vaccine mandate "allows some number of unvaccinated individuals to continue working in healthcare facilities based on medical exemptions while refusing to allow individuals to continue working while unvaccinated for religious reasons." *Lowe v. Mills*, 68 F.4th 706, 714 (1st Cir. 2023). The government argued that "the medical exemption is fundamentally different from a religious exemption because a medical exemption aligns with the State's interest in protecting public health." *Id.* at 715 (cleaned up). But the court rejected this argument, holding that the medical and religious exemptions were comparable because both "undermine[d] the State's interests in the same way"—namely, "by introducing unvaccinated individuals into healthcare facilities" and thus "increas[ing] the

risk of disease spread." *Id.*; *see also Brox v. Woods Hole, Martha's Vineyard & Nantucket Steamship Auth.*, 83 F.4th 87, 100 (1st Cir. 2023) (*Brox I*) (agreeing with *Lowe*); *but see Brox v. Woods Hole, Martha's Vineyard & Nantucket Steamship Auth.*, 164 F.4th 37, 49 (1st Cir. 2026) (*Brox II*) (concluding "on the limited record" that "the risks associated with each exemption are not comparable").[2]

Similarly, the Tenth Circuit held that a university's vaccine mandate was not generally applicable when it allowed medical exemptions if they would not "pose[] a direct threat to the health or safety of others," but allowed religious exemptions only if they would not "unduly burden[] the health and safety of others." *Does 1-11 v. Bd. of Regents of Univ. of Colo.*, 100 F.4th 1251, 1277 (10th Cir. 2024). Because the policy applied "a lower threshold for denying religious exemptions" than for "den[ying] secular medical exemption[s]," it made an impermissible "value judgment in favor of secular motivations." *Id.*; *see also Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1184 (9th Cir. 2021) (Ikuta, J., dissenting) (policy allowing medical but not religious exemptions was not generally applicable because both exemptions "pose[d] identical risks" of "unvaccinated students in the classroom").

---

[2] The District (at Appellant.Br.22-23) relies on *Does 1-6 v. Mills*, 16 F.4th 20 (1st Cir. 2021). In *Lowe*, a subsequent appeal in the same case, the First Circuit held that the *Does 1-6* decision was preliminary, involved a different "factual record[]," and was not "binding." 68 F.4th at 712 n.10.

In contrast, the Second Circuit in *We The Patriots USA v. Hochul* rejected a *Tandon* argument, holding that medical exemptions didn't undermine the government's interest in "protecting the health" of employees "because applying the vaccination requirement to individuals with medical contraindications" "would harm [their] health." 17 F.4th 266, 285 (2d Cir. 2021). It also determined that its comparability analysis was not "confine[d] … to evaluating the risk of COVID-19 transmission posed by each unvaccinated individual," but that it should consider the overall number of medical versus religious exemptions. *Id.* at 286.

Similarly, the Third Circuit held that medical exemptions did not undermine general applicability because "[u]nlike a religious exemption, a medical exemption furthers the [government's] interest in keeping its employees safe and healthy." *Spivack v. City of Philadelphia*, 109 F.4th 158, 176 (3d Cir. 2024). Likewise, in *Doe*, the Ninth Circuit ruled that medical exemptions did not "undermine the District's interests as a religious exemption would" because the medical exemptions "serve[d] the primary interest for imposing the mandate—protecting student 'health and safety.'" 19 F.4th at 1178. The court also suggested that if "the number of students … likely to seek a medical exemption … is very small and the number of students likely to seek a religious exemption is large," then the risks posed by both exemptions "would not qualify as 'comparable.'" *Id.*; *see also Perry v. Marteney*, 172 F.4th 315, 326 (4th Cir. 2026) ("medical exemptions will often not be comparable to religious exemptions").

### 2. The cases that justify preferential treatment for medical exemptions are incorrect.

The cases upholding preferential treatment for medical exemptions are incorrect, and this Court should reject their approach. Their reasoning suffers from three primary flaws.

First, the cases misapply *Tandon* by "incorrectly focus[ing] on the reasons for the exemption" (*i.e.*, protecting employees from adverse reactions to the vaccine) "rather than the asserted interest" justifying the mandate itself (*i.e.*, reducing the spread of COVID-19). *Doe*, 19 F.4th at 1185 (Ikuta, J., dissenting). For example, the Second Circuit in *We The Patriots* said medical exemptions do not undermine general applicability "because applying the vaccination requirement to individuals with medical contraindications" "would harm [the employee's] health." 17 F.4th at 285; *see also Spivack*, 109 F.4th at 176 (government "would hardly be protecting its [employees] if it required them to accept medically contraindicated treatments").

But that addresses the wrong question. The question is not why a secular exemption is granted, but whether the secular and religious conduct pose a comparable "risk[]" to the interest underlying the mandate—*i.e.*, preventing "the spread of COVID–19." *Tandon*, 593 U.S. at 62. And in the vaccine context it is undisputed that "irrespective of the reason that the employee is unvaccinated," "any individual unvaccinated employee is

likely to present statistically comparable risks of both contracting and spreading COVID-19." *We The Patriots*, 17 F.4th at 286.

This error—focusing on the reason for the exemption, rather than the reason underlying the mandate—makes it easy to evade *Tandon* in almost any case. The government can always articulate its interest to encompass *both* the interest underlying the mandate *and* the interest underlying secular exemptions. That is, "at a granular enough level, the purpose of any law is simply to 'appl[y] to everything it applies to.'" *M.A. ex rel. H.R. v. Rockland Cnty. Dep't of Health*, 53 F.4th 29, 42 (2d Cir. 2022) (Park, J., concurring).

In *Tandon*, for example, California could have articulated its interest as "preventing the spread of COVID-19" (the interest underlying the mandate) "consistent with the economic wellbeing of the community" (the interest underlying exemptions for salons and restaurants). On that version of the interest, exempting salons and restaurants (like exempting employees with medical contraindications) "makes sense" and seems "important" and "justified" in a way that exempting religious gatherings doesn't—but that doesn't make the law generally applicable. *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 544 (1993).

Courts applying rational basis review to vaccine mandates with medical exemptions make the same move: articulating the government's interest as preventing the spread of COVID-19 (the interest underlying the

mandate) consistent with the health of employees (the interest underlying medical exemptions). *See We The Patriots*, 17 F.4th at 285-86 (policy reduces "the risk of COVID-19 transmission" while "protecting the health" of employees). But that's another way of saying that while the government has an important interest in preventing the spread of COVID-19, it will compromise that interest for reasons it deems important (avoiding adverse medical reactions), but not for reasons it deems unimportant (avoiding conscience violations). This is precisely the "value judgment in favor of secular motivations" the Free Exercise Clause prohibits. *Does 1-11*, 100 F.4th at 1278.

Of course, courts may still consider whether there are compelling reasons to exempt secular but not religious conduct *in the strict scrutiny analysis*. But when there is a "secular reason for acting" that is "so important that the government has a compelling interest in treating that secular act more favorably," that "limited consideration of the reasons for secular exceptions" belongs in the strict scrutiny analysis, not as an offramp to evade strict scrutiny altogether. Douglas Laycock & Steven T. Collis, *Generally Applicable Law and the Free Exercise of Religion*, 95 Neb. L. Rev. 1, 16 (2016).

Second, and relatedly, courts have misapplied *Tandon* by framing the government's interests at "an artificially high level of generality," such as "protec[ting] the health and safety of all [citizens], patients, and healthcare workers alike," such that medical exemptions would be less

likely to undermine it. *Does 1-3 v. Mills*, 142 S. Ct. 17, 20 (2021) (Gorsuch, J., dissenting). *See Brox II*, 164 F.4th at 48 ("protecting the health of its employees"); *We The Patriots*, 17 F.4th at 285 ("protecting the health of covered personnel"); *Spivack*, 109 F.4th at 176 ("keeping its employees safe and healthy"); *Perry*, 172 F.4th at 326 ("generally promot[ing] [school children's] health and well-being"). But as Justice Gorsuch has explained, the comparability analysis under *Tandon* considers "only the government's *actually asserted* interests as applied to the parties before it"—"not *post-hoc* reimaginings of those interests expanded to some society-wide level of generality." *Does 1-3*, 142 S. Ct. at 20 (Gorsuch, J., dissenting).

Third, courts have misapplied *Tandon* by focusing on the aggregate number of religious versus medical exemptions, suggesting that a potentially larger number of religious exemptions means the conduct is not comparable. *See, e.g.*, *We The Patriots*, 17 F.4th at 286; *Brox II*, 164 F.4th at 49. But *Tandon* doesn't invite comparison of all potential secular and religious conduct in the aggregate; it says laws lack general applicability "whenever they treat *any* comparable secular activity more favorably than religious exercise." 593 U.S. at 62.

Aggregating all possible requests for religious exemptions "echoes the classic rejoinder of bureaucrats throughout history: If I make an exception for you, I'll have to make one for everybody, so no exceptions." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418,

435-36 (2006). But the Supreme Court has rejected these sorts of "slippery-slope concerns" for religious exemptions. *Id.* Governments "cannot escape [their] obligations under the Free Exercise Clause" by implementing a policy "that is so burdensome that a substantial number of [employees]" request exemptions. *Mahmoud v. Taylor*, 606 U.S. 522, 567 (2025).

### 3. The District's policy is not generally applicable under *Tandon*.

Applying *Tandon* correctly, the District's policy is not generally applicable. That the District treated medical exemption requests more favorably than religious requests is undisputed. The District granted every medical exemption request it received, while denying every religious exemption request. R.Doc.365 at 73-74. Indeed, when the District received a religious exemption request that also contained potential medical reasons, Liu followed up with those employees to ensure they submitted paperwork for a medical exemption—which the District then granted. *Id.* at 324-25, 342-44. By contrast, Liu never sought more information that might lead to a religious exemption. *Id.* at 325. The District's Chief Human Resources officer, Charles Burton, stated there was no information Plaintiffs could have provided to receive a religious exemption—except suggesting their request was "connected to a medical reason." *Id.* at 200-01.

The only question then is whether medical and religious exemptions "pose[d]" "similar risks" to the District's asserted interests. *Tandon*, 593

U.S. at 62. The District asserted three interests underlying its policy: 1) "to provide a free public education to students;" 2) "to safeguard the health and well-being of employees and their families;" and 3) "to maintain a public school environment wherein the recognized hazards associated with COVID-19 are mitigated to the fullest extent possible." R.Doc.24-1 at 1.

Consider the last interest first: mitigating the spread of COVID-19 to the fullest extent possible. Of course, "the inclusion of the medical exemption undermines the [District's] interests" "in the same way that a religious exemption would," as both pose identical risks of spreading COVID-19 by "introducing unvaccinated individuals" into schools. *Lowe*, 68 F.4th at 715. And the District "could do an even better job" of mitigating the risks by not allowing *any* exemptions—medical or religious. *Id.*

The second interest—"safeguard[ing] the health and well-being of employees"—just reframes the first at a higher level of generality to include both the interest justifying the mandate (mitigating the spread of COVID-19) and the reason for medical exemption (protecting employee health). But that contradicts *Tandon* for the reasons just explained: the District treats one aspect of employee well-being as "worthy of solicitude" (avoiding adverse medical reactions) but another aspect of employee well-being as inconsequential (avoiding a violation of conscience). *Fulton*, 593 U.S. at 537.

17

Turning to the remaining interest—educating students—the District's actions *undermined* that interest, as it led to the suspension or dismissal of over 100 employees and worse educational experiences for students. *See* R.Doc.360 at 62 (elementary theater program discontinued); *id.* at 110 (construction-trade class taught by substitute without relevant experience); R.Doc.361 at 155, 186-87 (FAA-compliant certification program suspended); R.Doc.363 at 76 (dual-credit eligibility suspended). And any staff who were unvaccinated for medical reasons would have to quarantine for the same amount of time as those unvaccinated for religious reasons—creating the same challenges to providing in-person education. R.Doc.365 at 188.

That the District's policy reflected a "value judgment in favor of secular motivations" also cannot be disputed. *Does 1-11*, 100 F.4th at 1277. Burton testified that the District "didn't want to cause more harm to someone for receiving a vaccine than the potential harm of not receiving a vaccine." R.Doc.365 at 308. But when it came to deciding what counts as harm, Burton testified that employees' medical reasons for remaining unvaccinated should be "weighed differently" than religious reasons. *Id.* at 183. In other words, the District enforced the policy to give more weight to an employee's health than to his conscience. "A policy cannot be generally applicable when it is deliberately enforced unequally." *BLinC v. Univ. of Iowa*, 991 F.3d 969, 989 (8th Cir. 2021) (Kobes, J., concurring and dissenting in part).

Accordingly, the policy is subject to strict scrutiny. The District makes no argument its policy survives strict scrutiny and has forfeited that issue. *See Fellowship of Christian Athletes v. San Jose Unified Sch. Dist.*, 82 F.4th 664, 694 (9th Cir. 2023) (en banc).

**B. The District's vaccine policy is not generally applicable because it allowed for individualized exemptions.**

A policy also "is not generally applicable if it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions." *Fulton*, 593 U.S. at 533 (cleaned up). Nor is a policy generally applicable if it allows "entirely discretionary exceptions" that are granted in an official's "sole discretion." *Id.* at 536-37. The District's policy does both.

First, the policy created a mechanism for individualized exemptions. The policy acknowledged that requests would be evaluated "on a case-by-case basis." Add.7, R.Doc.128-4 at 2. And Liu evaluated each request "individually," looking for "unique circumstances that might lead to an exemption." R.Doc.365 at 201-02. There were several instances where the employee "initially filed a religious exemption request that was denied" but was "later granted" as "a medical exemption." *Id.* at 324.

This case-by-case decision-making triggers strict scrutiny—particularly given how the District steered religious objectors toward asserting medical objections, which at minimum reflects a preference for non-reli-

gious conduct, if not outright hostility to religion. The District clearly "decide[d]" that medical reasons "for not complying with the policy [were] worthy of solicitude," while religious reasons were not. *Fulton*, 593 U.S. at 537. A policy that allows "individualized exemptions" "only if [employees] invoke certain preferred (nonreligious) justifications" is not generally applicable. *Does 1-3*, 142 S. Ct. at 19 (Gorsuch, J., dissenting).

Second, the District's decisions to grant or deny exemptions were "purely discretionary," made in Burton's "sole discretion." Add.98-99, R.Doc.229 at 47-48 (quoting *Fulton*, 593 U.S. at 537). The fact that Burton exercised his discretion to grant all medical exemptions but deny all religious ones only makes the problem worse, demonstrating that the discretion in fact favored secular conduct. That makes this case even easier than *Fulton*, where the Court held that the mere "creation of a formal mechanism for granting exceptions renders a policy not generally applicable," regardless of how that discretion is used. 593 U.S. at 537.

This conclusion aligns with holdings of several other circuits. For example, the Sixth Circuit held that a university's vaccination policy for student-athletes was not generally applicable where the policy stated that "[m]edical or religious exemptions and accommodations will be considered on an individual basis," but the university ultimately "barred every unvaccinated student-athlete from 'engag[ing] in team activities.'" *Dahl v. Bd. of Trs. of W. Mich. Univ.*, 15 F.4th 728, 730, 733 (6th Cir. 2021). And the Third Circuit held that where an official "create[s], on

20

paper, a mechanism for individualized exemptions" from a vaccine mandate, "but then, in practice, decline[s] to extend it to cases of religious hardship," that "trigger[s] strict scrutiny." *Spivack*, 109 F.4th at 172 (cleaned up); *see also Does 1-11*, 100 F.4th at 1273 (policy that "granted or denied exemptions on a case-by-case basis" was not generally applicable); *Kane v. De Blasio*, 19 F.4th 152, 169 (2d Cir. 2021) (where government has "substantial discretion over whether to grant" religious exemptions, strict scrutiny applies).

The District fails to defend its policy against this application of *Fulton*. Strict scrutiny thus applies and the District makes no argument its policy survives that analysis.

## C. The District's vaccine policy is not subject to rational basis review under *Jacobson*.

The District's main defense is to attempt to exchange the free exercise framework for more deferential rational-basis review under *Jacobson v. Massachusetts*, 197 U.S. 11 (1905). Appellant.Br.19-20. But *Jacobson* applied rational basis review because it addressed a Fourteenth Amendment substantive due process challenge—not a First Amendment claim. 197 U.S. at 14, 24-25. And rational-basis review "is the test this Court *normally* applies to Fourteenth Amendment challenges," if no fundamental right or suspect classification is at issue. *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 24 (2020) (Gorsuch, J., concurring).

Contrast *Jacobson* with *Diocese of Brooklyn*, which (as here) involved a free-exercise challenge to COVID-19 regulations. The Supreme Court determined that the challenged policies were not neutral and generally applicable and applied strict scrutiny, without referring to *Jacobson*. 592 U.S. at 17-19. Justice Gorsuch's concurrence addressed *Jacobson* specifically, explaining that it provided no reason "to depart from normal legal rules during a pandemic"—which meant protecting our "first freedom" by applying free exercise rules to free exercise claims. *Id.* at 23-24 (Gorsuch, J., concurring). Likewise, the Court in *Tandon* evaluated free exercise challenges without reference to *Jacobson*. 593 U.S. at 62-65.

Nor has this Court applied *Jacobson* to free exercise claims. Rather, *In re Rutledge*, 956 F.3d 1018 (8th Cir. 2020) and *Heights Apartments v. Walz*, 30 F.4th 720 (8th Cir. 2022) involved unenumerated substantive due process rights. The same is true of the District's primary out-of-circuit case, *Health Freedom Defense Fund v. Carvalho*, 148 F.4th 1020, 1030 (9th Cir. 2025). Thus, *Jacobson* does not apply.

## II. The District's challenges to the sincerity, accuracy, and religiosity of Plaintiffs' objections fail.

The District's other challenges—though couched as objections to discovery orders and expert exclusion—attack Plaintiffs' religious objections in three ways. First, the District questions whether Plaintiffs' objections are sincere. Second, it asserts Plaintiffs are incorrect that the requirements of their faith conflict with the vaccine policy. Third, it argues

Plaintiffs were motivated by secular, not religious, concerns. Appellant.Br.36-54. But each of these arguments fails, as these are either issues of fact for the jury or cross into religious questions of complicity that are beyond "judicial ken." *Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989).

***Sincerity.*** Whether a practice arises from "a sincerely held religious belief is a factual determination." *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 983 (8th Cir. 2004). Here, there was ample ground for a jury to find the Plaintiffs sincere. Indeed, the District doesn't dispute that all Plaintiffs were willing to suffer significant financial penalties for adhering to their convictions. That alone is enough to support the verdict.

In response, the District would parse Plaintiffs' medical history to see if they ever acted inconsistently with their religious beliefs. Appellant.Br.36-37. But this presumes that an individual's actions may never deviate from their espoused beliefs if they are to receive a religious accommodation. Even if the District had uncovered the information it suggests, Plaintiffs' "perfect adherence" to their beliefs is "not required." *Holt v. Payne*, 85 F.4th 873, 879 (8th Cir. 2023); *see also Love v. Reed*, 216 F.3d 682, 688 (8th Cir. 2000) (Courts may not "deny a man the right to his religion simply because he is still struggling to assimilate the full scope of its doctrine."). The First Amendment and Title VII are not reserved for flawless saints and theologians.

Worse, the District's sincerity arguments would impermissibly entangle judges and juries in religious questions by forcing them to decide that certain actions (*i.e.*, receiving other medications) are sufficiently theologically similar to receiving the COVID-19 vaccine such that Plaintiffs have acted "inconsistent[ly]" with their beliefs. Appellant.Br.36. But whether receiving one medication raises the same issues of moral complicity or bodily defilement as another sounds in theology, not pharmacology. And where a religious plaintiff "drew a line" theologically, "it is not for" civil courts "to say that the line he drew was an unreasonable one." *Thomas v. Rev. Bd.*, 450 U.S. 707, 715 (1981).

***Religious conflict.*** Next, the District says it should have been permitted to use expert testimony to dispute "whether the Board's COVID-19 vaccination policy *actually* conflicted" with Plaintiffs' religious beliefs. Appellant.Br.43, 46-47. According to the District, "Plaintiffs are not educated in cellular biology or vaccinology," and its expert would have opined on "[o]*bjective* facts about the vaccines' connections to stem cells," purportedly to "assist[] the jurors" in evaluating Plaintiffs' beliefs that taking the vaccine "was tantamount to being complicit in an abortion." Appellant.Br.43, 46-47.

But again, whether an employee's "alleged religious beliefs conflict with her employer's policy" is a factual question for the jury. *Brokken v.*

*Hennepin County*, 140 F.4th 445, 452 (8th Cir. 2025). Plaintiffs here provided ample testimony supporting the jury's factual finding in their favor. *See* Appellees.Br.36-39.

Moreover, the connection between the vaccines and stem cells is not solely a scientific question; it also "implicates a difficult and important question of religion and moral philosophy"—namely, when is "an act that is innocent in itself" (such receiving a vaccine) "connected to the destruction of an embryo in a way that is sufficient to make it immoral"? *Burwell v. Hobby Lobby Stores*, 573 U.S. 682, 724 (2014). The Supreme Court held that such questions of moral complicity are ones "that the federal courts have no business addressing." *Id.*; *see also Hernandez*, 490 U.S. at 699 (courts cannot question the "validity of [Plaintiffs'] interpretations of th[eir] creeds"). Thus, the district court correctly excluded the expert's testimony.[3]

***Religiosity.*** Lastly, the District tries to dispute the jury's verdict by claiming Plaintiffs' objections are not religious but are instead grounded in "beliefs of a medical, scientific, or philosophical nature." Appellant.Br.50. But "it [is] for the jury to resolve" whether an employment

---

[3] *Kale v. Aero Simulation* is not to the contrary. It stands only for the proposition that a plaintiff must "connect his objection" to an employment requirement "with his specific religious beliefs." 139 F.4th 684, 689 (8th Cir. 2025).

requirement "interfered with the observance or practice of [plaintiff's] religion," or a "purely personal preference." *Vetter v. Farmland Indus.*, 120 F.3d 749, 752 (8th Cir. 1997). Plaintiffs here testified at length about the religious nature of their objections. *See* Appellees.Br.36-39.

Even assuming Plaintiffs also had secular reasons for objecting to the vaccine, "overlap between a religious and political view" doesn't forfeit protections for that view. *Ringhoefer v. Mayo Clinic, Ambulance*, 102 F.4th 894, 901 (8th Cir. 2024). Accepting the District's invitation to hairsplit whether objections are "'primarily' or 'mostly' or 'minimally' or 'tangentially'—pick your adverb—based on religion," "would prove slippery in practice and arbitrary in their application." *Passarella v. Aspirus*, 108 F.4th 1005, 1010 (7th Cir. 2024).

This Court has already held that beliefs virtually identical to those asserted here are religious and can be protected under federal law. *Ringhoefer*, 102 F.4th at 898 (employees believed that "their 'body is a temple'" and that "their anti-abortion beliefs … prevent using a product 'produced with or tested with fetal cell lines'"). This Court has also held that such beliefs create an actionable "conflict between [an employee's] … religious beliefs" and a vaccine mandate. *Id.* at 902; *see also Brokken*, 140 F.4th at 452. The District's contrary arguments cannot be squared with *Ringhofer*, *Brokken*, or the weight of authority of other circuits that have held similar objections to vaccine requirements are protected by federal law. *See Bazinet v. Beth Isr. Lahey Health*, 113 F.4th 9, 15-17 (1st Cir. 2024);

*Finn v. Humane Soc'y of U.S.*, 160 F.4th 92, 99 (4th Cir. 2025); *Wright v. Honeywell Int'l*, 148 F.4th 779, 783-84 (5th Cir. 2025); *Lucky v. Landmark Med. of Mich.*, 103 F.4th 1241, 1243-44 (6th Cir. 2024); *Passarella*, 108 F.4th at 1009; *see also Detwiler v. Mid-Columbia Med. Ctr.*, 156 F.4th 886, 903 (9th Cir. 2025) (VanDyke, J., dissenting) (disagreeing with Ninth Circuit decision that "puts [the] court at odds with every published circuit court decision").

## III. The District failed to show that accommodating Plaintiffs would have been an undue hardship.

The District also offers no basis for reversing the jury's verdict on Plaintiffs' Title VII claim, because the District has not shown as a matter of law that accommodating Plaintiffs' religious practices would have caused an undue hardship. *See* 42 U.S.C. § 2000e(j).

To establish undue hardship, the District must "show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Groff v. DeJoy*, 600 U.S. 447, 470 (2023). The analysis "takes into account … the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of an employer." *Naylor v. County of Muscatine*, 151 F.4th 973, 976 (8th Cir. 2025) (cleaned up). At minimum, the accommodation must impose "a greater burden than that created 'by temporary costs, voluntary shift swapping, occasional shift swapping, or adminis-

trative costs.'" *Id.* This is a "fact-specific inquiry," and it is for "a reasonable jury" to determine whether the "evidence [is] sufficient to establish an undue hardship." *Id.* at 977; *see also Carter v. Loc. 556, Transp. Workers Union of Am.*, 156 F.4th 459, 487 (5th Cir. 2025) (declining to overturn verdict because employer "ultimately failed to convince the jury" it faced an undue hardship). Further, "*Groff* clarified that the [undue hardship] standard is more rigorous than previously thought." *Bazinet*, 113 F.4th at 18. Given its fact-specific nature, courts should hesitate to determine undue hardship exists as a matter of law.

Here, not only did the District not prove that the costs of accommodating Plaintiffs would be "substantial" compared to its overall budget—it failed to put on *any* evidence of the dollar amount for the increased costs. As the district court explained at summary judgment, the District "failed to paint a clear picture of the specific costs that granting the religious exemptions would have had" and "fail[ed] to tie" the impacts of contact tracing and testing for Plaintiffs "to a concrete cost or otherwise relate the cost to the size" of the District's budget. Add.123-24, R.Doc.229 at 72-73. The District's case suffered the same deficiencies at trial. Add.200, R.Doc.377 at 12. Because the District "'nowhere identifie[d] any actual costs it will face' from granting the plaintiff's requested accommodation," it was more than reasonable for the jury to find in Plaintiffs' favor. *Naylor*, 151 F.4th at 977 (quoting *Hebrew v. Tex. Dep't of Crim. Just.*, 80 F.4th 717, 722 (5th Cir. 2023)).

Further, as Plaintiffs explain (at Appellees.Br.17-21) the evidence supports the jury's verdict. The District provided accommodations for contact tracing, quarantining, and remote working for staff members who were unvaccinated for medical reasons, as it retained options for teachers to teach remotely if they were required to quarantine. The District received significant federal funding that could assist with increased costs. This evidence allowed the jury to conclude the District did not face an undue hardship.

## CONCLUSION

This Court should affirm the judgment.

Date: May 27, 2026

Respectfully submitted,

/s/ *Andrea R. Butler*
ANDREA R. BUTLER
LUKE W. GOODRICH
TIMOTHY P. KOWALCZYK
THE BECKET FUND FOR
 RELIGIOUS LIBERTY
1919 Pennsylvania Ave., NW
 Suite 400
Washington, DC 20006
(202) 955-0095
*abutler@becketfund.org*

*Counsel for* Amicus Curiae

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this *amicus* brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B)(i) because it contains 6,498 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word (the program used for the word count).

/s/ *Andrea R. Butler*
Andrea R. Butler

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 25, 2026, a true and correct copy of the foregoing Corrected Brief of *Amicus Curiae* the Becket Fund for Religious Liberty was served electronically on the counsel registered for service via the CM/ECF system.

Date: June 25, 2026

/s/ *Andrea R. Butler*
Andrea R. Butler