# 26-1112

## IN THE
# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

WANDA BRANDON;ANDREW CRAIG; )
ALICE CROCKETT; )
AMIRA HERNDON; )
    Plaintiffs-Appellees, )
     )
MICHELLE JOHNSON; )
PRECIOUS MABRY; )
Plaintiffs, )
     )
JOHNNIE McCREARY; )
TAMMY O'CONNOR; )
PAUL PERNICIARO; )    Case No. 26-1112
    Plaintiffs-Appellees, )
     )
ANGEL SCOTT; )
    Plaintiff, )
     )
SHENICQUEL SPOTTS; )
JAMES APPLE; )
ANTHONY COMPARATO; )
MARC INGRAM; ANNE GILLESPIE; )
JEFFERY MCCAW; )
    Plaintiffs–Appellees, )
     )
SAIDIA MCDANIEL; )
ROCHELLE PAGE; )
LISA SCAILS-DANSBERRY; )
JEAN SLAVEN; QUINTON STEWART; )
    Plaintiffs, )
     )
v. )

BOARD OF EDUCATION OF THE CITY )
OF ST. LOUIS;                                  )
    Defendant-Appellant,            )
                                               )
KELVIN R. ADAMS;                        )
    Defendant, and                     )
                                               )
CHARLES K. BURTON;                   )
    Defendant.                              )

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, CASE NO. 4:22-CV-00635 (SRC)

---

## REPLY BRIEF OF DEFENDANT-APPELLANT BOARD OF EDUCATION OF THE
## CITY OF ST. LOUIS

---

Joshua E. Douglass
MICKES O'TOOLE, LLC
12412 Powerscourt Drive, Suite 200
St. Louis, Missouri 63131
(314) 878-5600
jdouglass@mickesotoole.com

Vincent D. Reese
MICKES O'TOOLE, LLC
12412 Powerscourt Drive, Suite 200
St. Louis, Missouri 63131
(314) 878-5600
vreese@mickesotoole.com

Ashley M. Wicks
MICKES O'TOOLE, LLC
12412 Powerscourt Drive, Suite 200
St. Louis, Missouri 63131
(314) 878-5600
awicks@mickesotoole.com

   Attorneys for Defendant-Appellant Board of Education of the City of St. Louis

# TABLE OF CONTENTS

TABLE OF CONTENTS.......................................................................................3

TABLE OF AUTHORITIES ............................................................................4

INTRODUCTION ............................................................................................5

ARGUMENT ...................................................................................................7

   I.    Policy 4624 is not subject to strict scrutiny. ...........................................7

     A.    Policy 4624 was generally applicable to all employees.......................7

     B.    Medical and religious exemptions were not comparable....................11

     C.    Employees seeking medical exemption were not similarly situated to employees seeking religious exemption. ......................................................17

   II.    Undue hardship is context-specific..........................................................22

   III.    Punitive damages are not merited and excessive. .................................25

CONCLUSION................................................................................................35

CERTIFICATE OF SERVICE .......................................................................36

CERTIFICATE OF COMPLIANCE ..............................................................37

# TABLE OF AUTHORITIES

***Cases***

*Does 1-11 v. Board of Regents of University of Colorado, 100 F.4th 1251, 1273 (10th Cir. 2024)* ..................................................................................8, 15

*Fulton v. City of Philadelphia, 593 U.S. 522 (2021)* ...........................................8, 9

*Groff v. DeJoy, 600 U.S. 447, 470-71 (2023)* ...................................... 22, 25, 29, 30

*Heights Apartments, LLC v. Walz, 30 F.4th 720, 727 (8th Cir. 2022)* ....................20

*In re Rutledge, 956 F.3d 1018, 1027-28 (8th Cir. 2020)* .................................. 19, 22

*Jacobson v. Commonwealth of Massachusetts, 197 U.S. 11, 31 (1905)* 19, 20, 21, 22

*Klimek v. CentraCare Health Sys., 2026 WL 1724207, at \*7 (8th Cir. 2026)* .. 22, 25

*Klinger v. Department of Corrections, 31 F.3d 727, 731 (8th Cir. 1994)* ...............17

*Lawrence v. CNF Transp., Inc., 340 F.3d 486, 495 (8th Cir. 2003)* ......................25

*Lowe v. Mills* ..........................................................................................................14

*Nelson v. Boatmen's Bancshares, Inc., 26 F.3d 796, 804 (8th Cir. 1994)* .............26

*Perry v. Marteney, 172 F.4th 315, 324 (4th Cir. 2026)* .............. 8, 12, 16, 17, 21, 22

*Sedalia No. 200 School Dist. v. Missouri Com'n on Human Rights, 843 S.W.2d 928, 930 (Mo.App. W.D.,1992)* ................................................................ 29, 30

*Tandon v. Newsom, 593 U.S. 61, 62 (U.S., 2021)* .................................................11

*Trans World Airlines, Inc. v. Hardison, 432 U.S. 63 (S.C. 1977)* ..........................29

*Trickey v. Kaman Indus. Technologies Corp., 705 F.3d 788, 802 (8th Cir., 2013)* 26

*Varner v. National Super Markets, Inc., 94 F.3d 1209, 1214 (8th Cir. 1996)* ........26

*We The Patriots USA, Inc. v. Connecticut Office of Early Childhood Development, 76 F.4th 130 (2d Cir. 2023)* ................................................................17

*We The Patriots USA, Inc. v. Hochul, 17 F.4th 266, 288-89 (2d Cir. 2021)* .............8

*Welcome v. Amplity, Inc., 2024 WL 6045692, at \*4 (W.D.Mo., 2024)* ...................33

**Statutes**

The Missouri Human Rights Act ("MHRA") ........................... 7, 22, 25, 26, 29, 32

Title VII ............................................................................................. 7, 22, 29, 32

Appellate Case: 26-1112    Page: 4    Date Filed: 07/06/2026 Entry ID: 5657649

# INTRODUCTION

As of August 2021, Missouri remained under a publicly declared COVID-19 state of emergency. App. 8233; R.Doc. 364, 180:1-6. App. 8239; R.Doc. 364, 186:12-24. St. Louis Public Schools, after spending the previous school year in remote status to the detriment of student educational outcomes, was attempting to educate thousands of students in person while confronting employee illness, staffing shortages, quarantine requirements, and significant operational disruptions. App. 8223-8256; R.Doc. 364, 180:1-203:13. In response, the Board of Education of the City of St. Louis adopted Policy 4624, requiring the District's 3,600 employees to vaccinate against COVID-19 by October 15, 2021. App. 1-2; Exhibit 192.

Policy 4624 permitted exemptions for medical conditions, disabilities, and religion. App. 1-2; Exhibit 192. For roughly ninety days between October 2021 and January 2022, the Board granted medical exemptions but denied religious exemptions because accommodating 198 religious objectors would have imposed substantial testing, quarantine, staffing, and administrative burdens during the Delta-variant surge. App. 951; R.Doc. 124-1, at 146:22-148:24. App. 1510; R.Doc. 130. App. 1650-1653; R.Doc. 131-3. App. 8247; R.Doc. 364, 194:5-19. App. 8299-8305; R.Doc. 364, 246:15-252:9. App. 8342; R.Doc. 364, 289:16-19. App. 8430-8431; R.Doc. 365, 74:23-75:12. App. 8539-8540; R.Doc. 365, 183:4-184:6. App. 8547-8548; R.Doc. 365, 191:25-192:12. App. 8582; R.Doc. 365, 226:15-22. App. 8607;

5

R.Doc. 365, 251:5-13. When public-health conditions, quarantine requirements, and operational circumstances changed in January 2022, the Board approved the previously denied religious accommodations and offered affected employees reinstatement. App. 8340-8342; R.Doc. 364, 287:5-289:19. App. 8344-8345; R.Doc. 364, 291:6-292:17. App. 8546-8549; R.Doc. 365, 190:11-193:17.

Given the circumstances faced by the Board during the narrow time frame at issue here, medical and religious exemptions were not constitutionally and operationally equivalent. Employees who could not safely receive a vaccine because of a documented medical condition were not similarly situated to employees who were medically eligible to vaccinate but declined to do so on religious grounds. Nor did medical exemptions undermine the Board's interests in the same manner as accommodating nearly 200 religious objectors.

The Board's temporary denial of religious exemptions was not attributable to religious animus, and no evidence suggested that the Board believed its actions were unlawful. The legal landscape governing religious accommodations during the COVID-19 pandemic was, at best, unsettled.

The Board made temporary, evidence-based decisions during the Delta-variant surge based on the legal standards and operational realities that existed in late 2021. App. 951; R.Doc. 124-1, at 146:22-148:24. App. 1510; R.Doc. 130. App. 1650-1653; R.Doc. 131-3. App. 8247; R.Doc. 364, 194:5-19. App. 8299-8305;

6

Appellate Case: 26-1112    Page: 6    Date Filed: 07/06/2026 Entry ID: 5657649

R.Doc. 364, 246:15-252:9. App. 8342; R.Doc. 364, 289:16-19. App. 8430-8431; R.Doc. 365, 74:23-75:12. App. 8539-8540; R.Doc. 365, 183:4-184:6. App. 8547-8548; R.Doc. 365, 191:25-192:12. App. 8582; R.Doc. 365, 226:15-22. App. 8607; R.Doc. 365, 251:5-13. The District Court erred by evaluating the Board's decisions through hindsight, collapsing legally distinct categories, discounting the operational realities facing the Board, and imposing legal standards not required by the Constitution, Title VII and MHRA.

## ARGUMENT

This brief responds to the principal arguments advanced by Appellees and Amicus without repeating the arguments set forth in the Board's opening brief. Nothing herein should be construed as a waiver, abandonment, or concession of any issue or argument previously presented. To the extent not specifically addressed, the Board continues to rely on the arguments and authorities contained in its opening brief.

For the reasons stated in its opening brief and herein, the Board respectfully requests that this Court reverse the judgment and remand with instructions to enter judgment in the Board's favor. Alternatively, the Board requests that the Court vacate the judgment and remand for a new trial.

**I.     Policy 4624 is not subject to strict scrutiny.**

*A. Policy 4624 was generally applicable to all employees.*

7

Appellate Case: 26-1112     Page: 7     Date Filed: 07/06/2026 Entry ID: 5657649

Appellees and Amicus argue Policy 4624 is subject to strict scrutiny because it contained "a mechanism for individualized exemptions." Their reliance on *Fulton v. City of Philadelphia*, 593 U.S. 522 (2021), is misplaced and inconsistent with the reasoning of the federal courts of appeals that have addressed mandatory COVID-19 vaccination policies.

As the Fourth Circuit recently observed, "every circuit court that has considered the issue has held that medical exemptions to compulsory vaccination laws are not 'mechanisms for individualized exemptions' within the meaning of *Fulton*." *Perry v. Marteney*, 172 F.4th 315, 324 (4th Cir. 2026) (collecting cases). Likewise, the Second Circuit has held that "[t]he mere existence of an exemption procedure, absent any showing that secularly motivated conduct could be impermissibly favored over religiously motivated conduct, is not enough to render a law not generally applicable." *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 288-89 (2d Cir. 2021). And the Tenth Circuit has explained that a policy does not create an impermissible individualized exemption system merely because it recognizes objective exemption categories rather than inviting officials to determine why an applicant holds particular religious beliefs. *Does 1-11 v. Board of Regents of University of Colorado*, 100 F.4th 1251, 1273 (10th Cir. 2024).

The facts of Fulton are substantially different than the facts of this case. *Fulton* invalidated a contractual non-discrimination requirement that vested government

8

officials with discretion to grant individualized exceptions based upon case-specific judgments. *Fulton,* 593 U.S. at 536. In contrast, during the ninety-day period here, the Board uniformly required vaccination of every medically eligible employee while excepting employees who could not safely receive the vaccine. App. 8343; R.Doc. 364, 290:8-15. That distinction is fundamentally different from the discretionary exemption system condemned in *Fulton*. Moreover, once the underlying operational burdens were mitigated, the Board approved all previously denied religious exemptions to Policy 4624.

The federal courts of appeals have consistently recognized that medical exemptions do not, standing alone, abrogate general applicability and Policy 4624 fits comfortably within those decisions. The evidence established that the Board was attempting to return thousands of students to in-person education during the Delta-variant surge while confronting employee illness, substitute shortages, quarantine requirements, contact-tracing obligations, testing burdens, and significant operational disruptions. App. 951; R.Doc. 124-1, 146:22-148:24. App. 1510; R.Doc. 130. App. 1650-1653; R.Doc. 131-3. App. 8247; R.Doc. 364, 194:5-19. App. 8299-8305; R.Doc. 364, 246:15-252:9. App. 8342; R.Doc. 364, 289:16-19. App. 8430-8431; R.Doc. 365, 74:23-75:12. App. 8539-8540; R.Doc. 365, 183:4-184:6. App. 8547-8548; R.Doc. 365, 191:25-192:12. App. 8582; R.Doc. 365, 226:15-22. App. 8607; R.Doc. 365, 251:5-13. The Board received approximately 198 religious

9

exemption requests. App. 8485-8486; R.Doc. 365, 129:22-130:15. Accommodating those requests would have required the Board to administer and monitor hundreds of COVID-19 tests each week while simultaneously managing staffing shortages and quarantine obligations. App. 8299-8305; R.Doc. 364, 246:15-252:9.

During the ninety-day period at issue, every medically eligible employee was required to vaccinate. App. 8343; R.Doc. 364, 290:8-15. Medical exemptions advanced, rather than undermined, the Board's objectives of protecting employee health and maximizing vaccination among employees who could safely receive the vaccine. App. 1-2; Exhibit 192. App. 8539-8540; R.Doc. 365, 183:11-184:2. Although medically exempt employees posed the same transmission risk as other unvaccinated employees, the Board's objectives extended beyond reducing transmission to protecting employee health by maximizing vaccination among those who could safely receive the vaccine. App. 1-2; Exhibit 192. App. 8539-8540; R.Doc. 365, 183:11-184:2.

Accordingly, because the Board uniformly implemented Policy 4624 by requiring vaccination of all medically eligible employees and did not authorize individualized religious exemptions or favor comparable secular conduct, it remained neutral and generally applicable as a matter of law. The District court therefore erred in subjecting the policy to strict scrutiny and should have applied a

10

Appellate Case: 26-1112    Page: 10    Date Filed: 07/06/2026 Entry ID: 5657649

rational basis review. App. 8539-8540; R.Doc. 365, 183:4-184:2. App. 8541-8542; R.Doc. 365, 185:12-186:3.

### B. *Medical and religious exemptions were not comparable.*

*Tandon v. Newsom,* 593 U.S. 61 (U.S., 2021), requires courts to compare whether secular and religious conduct undermine the government's asserted interests "in a similar manner." *Id*. at 62. Appellees and Amicus define the Board's interests too narrowly by reducing the analysis to vaccinated versus unvaccinated employees. The Board's interests were broader. Policy 4624 sought to maximize vaccination among medically eligible employees, protect employee health, preserve staffing stability, and maintain in-person education during the Delta-variant surge. App. 1-2; Exhibit 192. App. 8532, R.Doc. 365, 176:4-22.

As recently stated by the Fourth Circuit, "medical exemptions will often not be comparable to religious exemptions when the government's asserted interest relates to health. Medical classifications and exemptions are an inescapable part of health regulation, and they generally exist to advance the state's health interests, not to undermine them. A state that limits the scope of a health law for medical reasons is not thereby compelled to grant religious or other non-health exemptions. To hold otherwise would lead to a slow unravelling of all manner of health and safety regulation. The First Amendment's protection of religious liberty does not require

11

Appellate Case: 26-1112     Page: 11     Date Filed: 07/06/2026 Entry ID: 5657649

such an interference with the states' police power." *Perry v. Marteney*, 172 F.4th 315, 326 (4th Cir., 2026)(internal quotations omitted).

Policy 4624 was adopted in August 2021, a time when the Board faced an unprecedented convergence of public-health and operational challenges. App. 8233; R.Doc. 364, 180:1-6. App. 8239; R.Doc. 364, 186:12-24. District employees had died from COVID-19, others had been seriously ill, and the Board was attempting to return to full in-person education while confronting staffing shortages, quarantine requirements, contact-tracing obligations, substitute shortages, and continuing uncertainty regarding the trajectory of the pandemic. App. 8150-8154; R.Doc. 364, 97:22-101:12. App. 8164-8167; R.Doc. 364, 111:8-114:6. App. 8437; R.Doc. 365, 81:3-16. App. 8519-8522; R.Doc. 365, 163:1-166:1. App. 8530; R.Doc. 365, 74:4-5, 74:15-19. App. 8572-8573; R.Doc. 365, 216:25-217:7. The Board's objective was not merely to reduce transmission in the abstract. It sought to maximize vaccination among employees who could safely be vaccinated, protect employee health within its workforce, reduce disruptions caused by illness and quarantine, preserve staffing stability, and maintain educational continuity for thousands of students. App. 1-2; Exhibit 192. App. 8532, R.Doc. 365, 176:4-22. Medical and religious exemptions affected those interests differently and therefore are not comparable.

A medically exempt employee did not frustrate the Board's goal of maximizing vaccination among employees who could safely be vaccinated because

12

vaccination itself posed a health risk to that employee. App. 8539-8540; R.Doc. 365, 183:11-184:2. App. 8664; R.Doc. 365, 308:10-18. By contrast, a medically eligible employee who declined vaccination necessarily reduced the number of vaccinated employees in the workforce and increased the operational burdens associated with maintaining a larger unvaccinated population. App. 1540; R.Doc. 130, p. 32. App. 8398-8399; R.Doc. 365, 42:12-43:1.

The distinction was not merely theoretical. It was quantitative and operational. The Board received approximately four times as many religious exemption requests as medical exemption requests. The evidence showed that accommodating approximately 198 religious objectors would have required administration and monitoring of roughly 400 COVID tests per week. App. 951; R.Doc. 124-1, 146:22-148:24. App. 1510; R.Doc. 130. App. 1650-1653; R.Doc. 131-3. App. 8247; R.Doc. 364, 194:5-19. App. 8299-8305; R.Doc. 364, 246:15-252:9. App. 8342; R.Doc. 364, at 289:16-19. App. 8430-8431; R.Doc. 365, 74:23-75:12. App. 8539-8540; R.Doc. 365, 183:4-184:6. App. 8547-8548; R.Doc. 365, 191:25-192:12. App. 8582; R.Doc. 365, 226:15-22. App. 8607; R.Doc. 365, 251:5-13. App. 8680; R.Doc. 365, 324:4-6. The District lacked the personnel and resources to absorb that burden while simultaneously managing quarantines, staffing shortages, contact tracing, and the educational needs of thousands of students. Unvaccinated employees were also subject to quarantine requirements that did not apply to vaccinated employees,

13

Appellate Case: 26-1112    Page: 13    Date Filed: 07/06/2026 Entry ID: 5657649

creating additional staffing instability during a period when substitute teachers were already in short supply. App. 951; R.Doc. 124-1, 146:22-148:24. App. 1510; R.Doc. 130. App. 1650-1653; R.Doc. 131-3. App. 8247; R.Doc. 364, 194:5-19. App. 8299-8305; R.Doc. 364, 246:15-252:9. App. 8342; R.Doc. 364, 289:16-19. App. 8430-8431; R.Doc. 365, 74:23-75:12. App. 8539-8540; R.Doc. 365, 183:4-184:6. App. 8547-8548; R.Doc. 365, 191:25-192:12. App. 8582; R.Doc. 365, 226:15-22. App. 8607; R.Doc. 365, 251:5-13.

That some of the Board's employees who were initially denied religious exemptions later received medical exemptions reinforces, rather than undermines, the Board's position. App. 8696-8700; R.Doc. 365, 340:16-344:5. Once an employee established a qualifying medical exemption, the employee no longer occupied the same position as a medically eligible employee who declined vaccination. The relevant constitutional inquiry is not whether both employees ultimately remained unvaccinated as asserted by Amicus. The inquiry is whether they affected the Board's objectives in the same manner. Under the Board's established interests, they did not.

The First Circuit's analysis in *Lowe v. Mills* reinforces the conclusion that the medical and religious exemptions at issue here are not comparable. The Court stated: "we agree with the Second Circuit that Supreme Court precedent suggests the appropriateness of considering aggregate data about transmission risks." *Id*. at 716.

14

Appellate Case: 26-1112    Page: 14    Date Filed: 07/06/2026 Entry ID: 5657649

The aggregate data considered by the Board during the ninety days at issue showed religious exemptions far exceeded medical exemptions and imposed fundamentally different operational burdens, the kind of aggregate data the First Circuit suggested would result in medical and religious exemptions not being comparable. App. 1540; R.Doc. 130, at p. 32. App. 8299-8305; R.Doc. 364, 246:15-252:9. App. 8343; R.Doc. 364, 290:8-15. App. 8398-8399; R.Doc. 365, 42:12-43:1.

Moreover, the Tenth Circuit's analysis of medical and religious exemptions in *Does 1–11 v. Board of Regents*, 100 F.4th 1251 (10th Cir. 2024) , is inapposite as the policy in question there was motivated by religious hostility and discriminatory intent. ("It is likely that the Does will be able to demonstrate that the September 1 Policy's discrimination against certain religions was motivated by animus. The record is replete with evidence of stereotypes about and prejudice toward certain religions and religious beliefs for being insufficiently "organized," insufficiently "official," or insufficiently "comprehensive" in the eyes of the Administration. The Administration gave every appearance of adjudicating [the Does'] religious objection[s] based on a negative normative 'evaluation of the particular justification for [their] objection[s] and the religious grounds for [them]." *Id*. at 1270 (internal quotations omitted.))

There was no animus here. Policy 4624 did not pass judgment on the validity or orthodoxy of religious beliefs, nor did it involve intrusive inquiries into

15

theological legitimacy. Indeed, as pointed out by Amicus, the religious objectors' beliefs sound in varying faiths and creeds. *See* Corrected Brief of Amicus Curiae The Becket Fund for Religious Liberty in support of Plaintiffs-Appellees and Affirmance, at p.4. *See* also, App. 6665; R.Doc. 358, 29:4-8. App. 6841-6842; R.Doc. 358, 205:24-206:4. App. 6976-6977; R.Doc. 359, t 61:23-62:1. App. 7070-7071; R.Doc. 360, 33:19-34:3. App. 7139; R.Doc. 360, 102:5-13. App. 7246; R.Doc. 360, 209:20-25. App. 7375; R.Doc. 361, 90:11-15. App. 7455; R.Doc. 361, t 170:9-16. App. 7581; R.Doc. 362, 35:13-20. App. 7739; R.Doc. 362, 193:7-18. App. 7821; R.Doc. 363, 12:7-12. App. 7896; R.Doc. 363, 87:1-9. App. 8019; R.Doc. 363, 210:12-17. All of the religious exemption requests were approved upon the Board's determination that the operational conditions changed, transmission declined, quarantine rules changed, and accommodation became feasible. App. 8340-8341; R.Doc. 364, 287:5-288:6. App. 8467; R.Doc. 365, 111:3-7. App. 8384; R.Doc. 365, 28:1-22. App. 8668-8669; R.Doc. 365, 312:21-313:4.

As *Perry* explains, medical exemptions generally advance rather than undermine governmental health interests. Because the Board distinguished between employees who could safely receive the vaccine and those who could not, the Board did not favor comparable secular conduct over religious conduct. App. 8539-8540; R.Doc. 365, 183:11-184:2. App. 8664; R.Doc. 365, 308:10-18. The District Court erred in concluding otherwise.

16

### C. Employees seeking medical exemption were not similarly situated to employees seeking religious exemption.

An Equal Protection claim begins with a threshold inquiry: whether the challenged groups are similarly situated in all relevant respects. *Klinger v. Department of Corrections*, 31 F.3d 727, 731 (8th Cir. 1994). If they are not, the no further analysis is needed.

The District court and Appellees define the relevant comparators too broadly by treating all unvaccinated employees as similarly situated. However, that analysis has been rejected elsewhere. See *We The Patriots USA, Inc. v. Connecticut Office of Early Childhood Development*, 76 F.4th 130 (2d Cir. 2023); *Perry v. Marteney*, 172 F.4th 315, 325 (4th Cir., 2026).

As discussed in Section I.B, medically exempt employees and medically eligible religious objectors were not comparable because they affected the Board's asserted interests in fundamentally different ways. App. 1540; R.Doc. 130, at p. 32. App. 8398-8399; R.Doc. 365, 42:12-43:1. App. 8539-8540; R.Doc. 365, 183:11-184:2. App. 8664; R.Doc. 365, 308:10-18. It follows that these groups likewise were not similarly situated.

Employees medically unable to receive a vaccine did not frustrate the Board's interests in the same manner as employees medically able to receive a vaccine but unwilling to do so. App. 1540; R.Doc. 130, at p. 32. App. 8398-8399; R.Doc. 365,

17

Appellate Case: 26-1112     Page: 17     Date Filed: 07/06/2026 Entry ID: 5657649

42:12-43:1. App. 8539-8540; R.Doc. 365, 183:11-184:2. App. 8664; R.Doc. 365, 308:10-18. The Board is not required to disregard the interests it was attempting to advance. Medical and religious exemption requests diverged dramatically in scale and operational impact. App. 1540; R.Doc. 130, at p. 32. App. 8398-8399; R.Doc. 365, 42:12-43:1. App. 8440; R.Doc. 365, 84:22-25. App. 8485-8486; R.Doc. 365, 129:22-130:15. App. 8539-8540; R.Doc. 365, 183:11-184:2. App. 8664; R.Doc. 365, 308:10-18. App. 8680; R.Doc. 365, 324:4-6. Requests for religious exemptions vastly outnumbered medical exemptions and accommodating those requests would have imposed significant burdens on testing capacity, contact tracing, quarantine management, and staffing stability. App. 951; R.Doc. 124-1, 146:22-148:24. App. 1510; R.Doc. 130. App. 1540; R.Doc. 130, at p. 32. App. 1650-1653; R.Doc. 131-3. App. 8247; R.Doc. 364, 194:5-19. App. 8299-8305; R.Doc. 364, 246:15-252:9. App. 8342; R.Doc. 364, 289:16-19. App. 8398-8399; R.Doc. 365, 42:12-43:1. App. 8430-8431; R.Doc. 365, 74:23-75:12. App. 8539-8540; R.Doc. 365, 183:4-184:6. App. 8547-8548; R.Doc. 365, 191:25-192:12. App. 8582; R.Doc. 365, 226:15-22. App. 8607; R.Doc. 365, 251:5-13. App. 8664; R.Doc. 365, 308:10-18. These differences are constitutionally significant because they directly affect the Board's ability to maintain safe operations, not merely its ability to reduce virus transmission.

Because medically exempt employees and medically eligible religious objectors were not similarly situated in the respects relevant to the Board's asserted

18

Appellate Case: 26-1112    Page: 18    Date Filed: 07/06/2026 Entry ID: 5657649

interests, Appellees cannot establish the requirement of identifying similarly situated comparators. The District court erred by treating two objectively different groups as constitutional comparators and by subjecting Policy 4624 to strict scrutiny.

4. *Public-health judgments were entitled to substantial judicial deference.*

During a public-health crisis, state action is "susceptible to constitutional challenge only if it ... has no real or substantial relation" to public health or constitutes a "plain, palpable invasion of rights." *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 31 (1905); *In re Rutledge*, 956 F.3d 1018, 1027-28 (8th Cir. 2020). Policy 4624 satisfied that standard. The policy was enacted in response to an ongoing public-health emergency, employee illness and deaths, staffing shortages, quarantine requirements, and the Board's obligation to maintain in-person education for approximately 3,600 employees and thousands of students. App. 1-2; Exhibit 192. App. 8116; R.Doc. 364, 63:5-7. App. 8152; R.Doc. 364, 99:2-11. App. 8153-8154; R.Doc. 364, 100:7-101:9. App. 8223-8256; R.Doc. 364, 180:1-203:13. App. 8299-8305; R.Doc. 364, at 246:15-252:9. App. 8150-8154; R.Doc. 364, at 97:22-101:12. App. 8164-8167; R.Doc. 364, at 111:8-114:6. App. 8572-8573; R.Doc. 365, at 216:25-217:7. App. 8519-8522; R.Doc. 365, at 163:1-166:1. App. 8530; R.Doc. 365, at 74:4-5, 74:15-19. App. 8437; R.Doc. 365, at 81:3-16.

The District court and Appellees discounted the significance of the ongoing public-health emergency confronting the Board and evaluated Policy 4624 largely

19

in hindsight rather than from the perspective of school officials responding to the Delta-variant surge.

The District court advanced directly to strict scrutiny without meaningfully addressing "when during the pandemic the constitutional lens shifted from *Jacobson* deference to the modern tiers of scrutiny." *Heights Apartments, LLC v. Walz*, 30 F.4th 720, 727 (8th Cir. 2022). In doing so, the court discounted the operational realities confronting the Board.

Moreover, a public health crisis is not static. The Board's response evolved as conditions evolved. When transmission declined, quarantine requirements changed, vaccination availability increased and the operation burdens associated with accommodating unvaccinated employees lessened in January 2022, the Board approved every previously denied religious accommodation. App. 8176; R.Doc. 364, 123:18-23. App. 8226; R.Doc. 364, 173:9-15. App. 8238; R.Doc. 364, 185:9-18. App. 8241; R.Doc. 364, 188:15-23. App. 8260; R.Doc. 364, 207:23-25. App. 8340-8342; R.Doc. 364, 287:5-289:19. App. 8344-8345; R.Doc. 364, 291:6-292:17. App. 8384; R.Doc. 365, 28:1-22. App. 8467; R.Doc. 365, 111:3-7. App. 8546-8549; R.Doc. 365, 190:11-193:17. App. 8668-8669; R.Doc. 365, 312:21-313:4. That progression demonstrates the Board's decisions were driven by changing public-health conditions rather than hostility toward religion.

Appellate Case: 26-1112    Page: 20    Date Filed: 07/06/2026 Entry ID: 5657649

The Board's evolving response is the opposite of arbitrary governmental action. It demonstrates that the Board continually reassessed Policy 4624 as public-health conditions changed.

The Fourth Circuit recently described *Jacobson* as "directly on point" in evaluating a constitutional challenge to a COVID-19 vaccination requirement. *Perry*, 172 F.4th at 327.

> [S]tates also have a legitimate interest in minimizing public health risks to the degree they deem advisable. A state can thus require significant swaths of its population to be vaccinated, so long as it reasonably believes such a step would protect and promote the public health. *See, e.g., Jacobson*, 197 U.S. at 12–13, 25–27, 25 S.Ct. 358 (upholding a law that required "all the inhabitants of Cambridge" to get vaccinated). The estimation of risk is preeminently a legislative matter, resting as it does on empirical assessment and public sentiment. Courts should not rush to second-guess these legislative judgments; the judiciary should hesitate before compelling religious exemptions to a host of civic obligations.

*Id*. at 328.

21

Appellate Case: 26-1112     Page: 21     Date Filed: 07/06/2026 Entry ID: 5657649

Rather than evaluating Policy 4624 from the perspective of school officials responding to the Delta-variant surge, the District court judged the Board's decisions through the lens of later developments and changed circumstances. *Jacobson*, *Rutledge*, and *Perry* counsel against that approach. The Board's contemporaneous public-health judgments were entitled to substantial judicial deference.

## II. Undue hardship is context-specific.

Appellees and the District court improperly reduce the undue-hardship inquiry to a financial accounting exercise. That is not what Title VII or MHRA require.

Undue hardship is a practical inquiry that depends upon the circumstances confronting the particular employer. As this Court recently explained, an employer "must show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances." *Klimek v. CentraCare Health Sys.*, 2026 WL 1724207, at *7 (8th Cir. 2026). At the same time, undue hardship "cannot be proved by hypothetical facts" and must be grounded in burdens that are "sufficiently real rather than speculative." *Id.*, quoting *Naylor v. County of Muscatine*, 151 F.4th 973, 976 (8th Cir. 2025).

*Groff* emphasized that courts must consider "all relevant factors in the case at hand." *Groff v. DeJoy*, 600 U.S. 447, 470-71 (2023). The Supreme Court described undue hardship as a "context-specific standard" requiring consideration of the employer's particular circumstances. *Id.* at 473.

Appellate Case: 26-1112    Page: 22    Date Filed: 07/06/2026 Entry ID: 5657649

The Board's evidence satisfied the context-specific analysis required to establish an undue burden. The Board did not rely on generalized concerns about COVID-19. As detailed in Appellant's opening brief, Policy 4624 was adopted during the Delta-variant surge while the District was attempting to provide in-person education to thousands of students. The evidence showed that District employees had died from COVID-19, others had been seriously ill, and the District was confronting substitute shortages, staffing shortages, quarantine requirements, contact-tracing obligations, and testing burdens. The Board received approximately 198 religious-exemption requests and presented evidence that accommodating those requests would have required administration and monitoring of hundreds of COVID tests each week while simultaneously managing quarantine and staffing issues. App. 1-2; Exhibit 192. App. 951; R.Doc. 124-1, at 146:22-148:24. App. 1510; R.Doc. 130. App. 1650-1653; R.Doc. 131-3. App. 8116; R.Doc. 364, 63:5-7. App. 8152; R.Doc. 364, 99:2-11. App. 8150-8154; R.Doc. 364, 97:22-101:12. App. 8164-8167; R.Doc. 364, 111:8-114:6. App. 8223-8256; R.Doc. 364, 180:1-203:13. App. 8299-8305; R.Doc. 364, 246:15-252:9. App. 8342; R.Doc. 364, 289:16-19. App. 8430-8431; R.Doc. 365, 74:23-75:12. App. 8437; R.Doc. 365, 81:3-16. App. 8485-8486; R.Doc. 365, 129:22-130:15. App. 8519-8522; R.Doc. 365, 163:1-166:1. App. 8530; R.Doc. 365, 74:4-5, 74:15-19. App. 8539-8540; R.Doc. 365, 183:4-184:6. App. 8547-8548; R.Doc. 365, 191:25-192:12. App. 8572-8573; R.Doc. 365, 216:25-217:7. App. 8582;

Appellate Case: 26-1112    Page: 23    Date Filed: 07/06/2026 Entry ID: 5657649

R.Doc. 365, 226:15-22. App. 8607; R.Doc. 365, 251:5-13. These were not hypothetical concerns. They were the operational realities confronting the District in the fall of 2021.

The relevant question is whether the hardship was real and substantial in light of the employer's particular circumstances. Here, the Board presented ample evidence that it was.

Moreover, the Board's decision to approve all previously denied religious accommodations in January 2022 confirms that its hardship determination was tied to actual conditions confronting the Board rather than to any categorical opposition to religious accommodations. As vaccination rates increased, transmission declined, quarantine requirements evolved, and the operational burdens associated with accommodating unvaccinated employees eased, the Board reassessed the circumstances and determined that accommodating approximately 198 religious objectors no longer imposed an undue hardship under the District's then-existing circumstances. App. 1510; R.Doc. 130. App. 1650-1653; R.Doc. 131-3. App. 8247; R.Doc. 364, 194:5-19. App. 8299-8305; R.Doc. 364, 246:15-252:9. App. 8342; R.Doc. 364, 289:16-19. App. 8430-8431; R.Doc. 365, 74:23-75:12. App. 8539-8540; R.Doc. 365, 183:4-184:6. App. 8547-8548; R.Doc. 365, 191:25-192:12. App. 8582; R.Doc. 365, 226:15-22. App. 8607; R.Doc. 365, 251:5-13.

24

The District court's analysis effectively transformed *Groff's* context-specific inquiry into a requirement that the Board assign a precise dollar value to every operational burden associated with accommodating approximately 198 religious objectors. Neither *Groff* nor *Klimek* imposes such a requirement. Because the Board presented concrete, contemporaneous, and case-specific evidence of substantial operational, staffing, administrative, and health-related burdens, it established that granting those accommodations during the fall of 2021 imposed an undue hardship on the conduct of its operations.

### III. Punitive damages are not merited and excessive.

Punitive damages require proof of an evil motive or reckless indifference to protected rights. That inquiry focuses on the defendant's state of mind at the time of the challenged conduct, not on whether a jury later concludes liability existed. Here, no evidence showed that any Board member or District official believed the temporary denial of religious accommodations violated the MHRA or consciously disregarded a known legal obligation.

The Missouri Human Rights Act ("MHRA") "permit[s] the award of punitive damages in a narrow class of cases." *Lawrence v. CNF Transp., Inc.*, 340 F.3d 486, 495 (8th Cir. 2003). Under the MHRA, Plaintiffs must show that the Board's conduct was "outrageous because of its evil motive or reckless indifference" to their rights, in a manner that would "shock the conscience and cause outrage." *Id.* at 495-6;

25

Appellate Case: 26-1112     Page: 25     Date Filed: 07/06/2026 Entry ID: 5657649

*Varner v. National Super Markets, Inc.*, 94 F.3d 1209, 1214 (8th Cir. 1996) (citations omitted); *see also Nelson v. Boatmen's Bancshares, Inc.*, 26 F.3d 796, 804 (8th Cir. 1994).

In reviewing the appropriateness of punitive damages, this Court has recognized that "the degree of reprehensibility of the defendant's conduct" is the primary consideration." *Trickey v. Kaman Indus. Technologies Corp.*, 705 F.3d 788, 802 (8th Cir., 2013). In evaluating the degree of reprehensibility, the Court considers:

> "whether ... the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident."

*Id*.

Given the considerations set out above, the Board's temporary denial of religious exemptions during the COVID-19 pandemic was not reprehensible.

First, any harm to the Appellees' was economic, not physical.

Appellate Case: 26-1112    Page: 26    Date Filed: 07/06/2026 Entry ID: 5657649

Second, the evidence showed the Board's implementation of Policy 4624 during the ninety-day denial of religious exemption was motivated by a desire to promote the health and safety of employees, staff and students. App. 1-2; Exhibit 192. App. 951; R.Doc. 124-1, 146:22-148:24. App. 1510; R.Doc. 130. App. 1650-1653; R.Doc. 131-3. App. 8247; R.Doc. 364, 194:5-19. App. 8299-8305; R.Doc. 364, 246:15-252:9. App. 8342; R.Doc. 364, 289:16-19. App. 8343; R.Doc. 364, 290:8-15. App. 8430-8431; R.Doc. 365, 74:23-75:12. App. 8438-8439; R.Doc. 365, 82:7-83:8. App. 8539-8540; R.Doc. 365, 183:4-184:6. App. 8547-8548; R.Doc. 365, 191:25-192:12. App. 8582; R.Doc. 365, 226:15-22. App. 8597; R.Doc. 365, 241:19-25. App. 8607; R.Doc. 365, 251:5-13.

Third, the Appellees' financial vulnerability was minimal and consisted primarily of temporary lost wages and benefits incurred during the ninety-day period between their suspension or termination the decision to grant the religious exemptions. App. 5382; R.Doc. 283-5, at 11. App. 7553; R.Doc. 362, 7:3-6. App. 7769; R.Doc. 362, 223:19-25. All Appellees' were offered their positions back and several obtained other employment shortly after separation. App. 7214-7217; R.Doc. 360, 177:7-180:4. App. 7359; R.Doc. 361, 74:6-22. App. 7840; R.Doc. 363, 31:15-25. App. 8344; R.Doc. 364, 291:6-12. App. 8345; R.Doc. 292:12-17.  These limited economic harms are reflected in the jury's awards of a combination of limited

27

Appellate Case: 26-1112    Page: 27    Date Filed: 07/06/2026 Entry ID: 5657649

economic losses and emotional distress damages rather than any permanent loss of employment or earning capacity. App. 5986-6050; R.Doc. 346.

Fourth, the Board's denial of religious exemptions to Policy 4624 was an isolated event. App. 8280-8282; R.Doc. 364, 227:17-229:21. While the denial of religious exemptions in October 2021 was uniform, it was temporary and limited, and all requested religious exemptions were granted in January 2022. App. 8176; R.Doc. 364, 123:18-23. App. 8226; R.Doc. 364, 173:9-15. App. 8238; R.Doc. 364, 185:9-18. App. 8241; R.Doc. 364, 188:15-23. App. 8260; R.Doc. 364, 207:23-25. App. 8340-8342; R.Doc. 364, 287:5-289:19. App. 8344-8345; R.Doc. 364, 291:6-292:17. App. 8384; R.Doc. 365, 28:1-22. App. 8467; R.Doc. 365, 111:3-7. App. 8546-8549; R.Doc. 365, 190:11-193:17. App. 8668-8669; R.Doc. 365, 312:21-313:4.

Fifth, there is no evidence that would support the conclusion that the Board acted with malice, trickery or deceit. To the contrary, and as is further set out below, the Board had every reason to believe its actions were lawful. The Board was transparent with Appellees' as to the requirements of Policy 4624 and the ramifications of their failure to comply. App. 1-2; Exhibit 192. App. 8434; R.Doc. 365, 78:1-23. Most importantly, when the factors driving the denial of the religious exemptions changed, the religious exemptions were granted. App. 8176; R.Doc. 364, 123:18-23. App. 8226; R.Doc. 364, 173:9-15. App. 8238; R.Doc. 364, 185:9-18.

28

App. 8241; R.Doc. 364, 188:15-23. App. 8260; R.Doc. 364, 207:23-25. App. 8340-8342; R.Doc. 364, 287:5-289:19. App. 8344-8345; R.Doc. 364, 291:6-292:17. App. 8384; R.Doc. 365, 28:1-22. App. 8467; R.Doc. 365, 111:3-7. App. 8546-8549; R.Doc. 365, 190:11-193:17. App. 8668-8669; R.Doc. 365, 312:21-313:4.

While *Groff v. DeJoy*, 600 U.S. 447, (S.C. 2023), sets out the current approach to analyzing whether a religious accommodation constitutes an undue hardship, when the Board weighed its obligations in October 2021, it did so under the dictates of *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (S.C. 1977). The Board's 2021 obligation in responding to religious accommodation requests under the MHRA was to "find and utilize alternatives which 1) do not compromise the employment entitlements of others, or 2) which do not require the employer to incur more than *de minimis* costs." *Sedalia No. 200 School Dist. v. Missouri Com'n on Human Rights*, 843 S.W.2d 928, 930 (Mo.App. W.D.,1992), quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (S.C. 1977). In fact, when asserting that it properly aggregated the MHRA and Title VII claims in the jury instructions, the District court specifically cited the elements of a *prima facia* case of religious discrimination under the MHRA stated in *Sedalia No. 200 School Dist. v. Missouri Com'n on Human Rights.* App. 9186; R.Doc. 377, p. 31.

It cannot be that the Board is held to the liability standard but not the affirmative defense standard set out in the same case, at least for purposes of

29

Appellate Case: 26-1112    Page: 29    Date Filed: 07/06/2026 Entry ID: 5657649

determining whether it acted with malice or reckless disregard. Even assuming the District court correctly applied post-*Groff* standards at trial, the Board's state of mind in October 2021 must be judged based on the law that existed in October 2021. At a minimum, the unsettled legal landscape surrounding COVID-19 employer vaccination policies in October 2021 precludes any finding that the Board knowingly violated clearly established law.

Moreover, as set out in the Board's opening brief, the District court dismissed the individual defendants who are the exact same decision makers that supposedly acted with reckless indifference so as to warrant punitive damages because they had qualified immunity. If the rights Plaintiffs asserted were not clearly established such that qualified immunity was appropriate, surely it cannot be said that the Board acted with reckless indifference necessary to support punitive damages.

While the Board maintains that it satisfied *Groff*, for purposes of analyzing any culpability relating to its assessment of the undue burden of granting the religious exemptions of Appellees, only the *Sedalia No. 200 School Dist.* standard is relevant. As discussed above, the Board presented extensive evidence that accommodating approximately 198 religious objectors would have imposed substantial operational, staffing, and administrative burdens. App. 951; R.Doc. 124-1, 146:22-148:24. App. 1510; R.Doc. 130. App. 1650-1653; R.Doc. 131-3. App. 8247; R.Doc. 364, 194:5-19. App. 8299-8305; R.Doc. 364, 246:15-252:9. App.

30

8342; R.Doc. 364, 289:16-19. App. 8430-8431; R.Doc. 365, 74:23-75:12. App. 8539-8540; R.Doc. 365, 183:4-184:6. App. 8547-8548; R.Doc. 365, 191:25-192:12. App. 8582; R.Doc. 365, 226:15-22. App. 8607; R.Doc. 365, 251:5-13. Whether or not the jury ultimately agreed with that assessment, those contemporaneous considerations demonstrate reasoned decision-making rather than conscious disregard of protected rights.

Punitive damages necessarily turn on the defendant's subjective awareness of illegality, not the abstract importance of the right at issue. Even assuming arguendo that a violation occurred, the absence of clearly established law at the time, or a subsequent shift or reinterpretation in the relevant law or legal standard, defeats any inference of reckless indifference or evil motive. Appellees' reliance on a pre-suit demand letter does not establish that the Board knew or should have known its conduct was unlawful. App. 7950; R.Doc. 363, 141:3-15. App. 8581; R.Doc. 365, 225:1-23. App. 8875; R.Doc. 366, 156:13-17. If it did, punitive damages would be available in virtually every case where a Plaintiff sent a letter accusing the Defendant of violating a law or asserting liability. The relevant question is not whether counsel asserted a violation, but whether the Board subjectively believed it was violating the law. No witness testified that any Board member or District official believed Policy 4624 violated Title VII or the MHRA.

31

Directly relevant to the Board's "awareness of illegality," was the testimony of Dr. Salmon with regard to stem cells and stem cells' connection to COVID-19 vaccines. The District court's exclusion of Dr. Salmon's testimony was particularly prejudicial because the testimony bore directly on the jury's subsequent assessment of the Board's conduct and the propriety of punitive damages. App. 8372-8373; R.Doc. 365, 16:10-17:14. Appellees repeatedly emphasized that their religious objections stemmed from the asserted connection between COVID-19 vaccines and fetal stem-cell lines. App. 6841-6842; R.Doc. 358, 205:24-206:11. App. 6907-6908; R.Doc. 358, 271:23-270:5. App. 7114; R.Doc. 360, 77:18-21. App. 7134; R.Doc. 360, 97:15-24. App. 7452-7453; R.Doc. 361, 167:25-168:8. App. 7583-7584; R.Doc. 362, 37:24-38:4. App. 7887; R.Doc. 363, 78:2-8. Dr. Salmon would have provided the jury with objective scientific evidence regarding the nature of that connection, including the historical origins of the relevant cell lines, the manner in which they were used in vaccine development, and the absence of fetal tissue in the vaccines themselves.

The significance of that testimony extended beyond the question of religious sincerity. At trial, the jury was ultimately asked to evaluate whether the Board's conduct justified punitive damages—a determination that necessarily required consideration of the Board's state of mind and the circumstances confronting it when Policy 4624 was implemented. Evidence that the Board was responding to

32

accommodation requests implicating complex scientific, ethical, religious, and public-health questions was relevant to whether the Board acted with reckless disregard to protected rights or instead was attempting to navigate an unprecedented public-health crisis using the information available at the time.

By excluding Dr. Salmon's testimony, the jury heard Appellees' characterization of the vaccines' relationship to fetal stem cells without hearing the scientific context surrounding those assertions. The exclusion prevented the Board from presenting evidence that would have demonstrated the complexity of the issues it faced and the reasonableness of its efforts to evaluate and respond to exemption requests during the Delta-variant surge. Contrary to the District court's ruling, Dr. Salmon's evidence was relevant to whether the Board's conduct could fairly be characterized as outrageous, malicious, or undertaken with conscious disregard for Appellees' rights. See *Welcome v. Amplity, Inc.*, 2024 WL 6045692, at *4 (W.D.Mo., 2024).

Dr. Salmon's testimony would have supplied important context demonstrating that the Board was confronting a difficult and evolving public-health issue rather than intentionally disregarding known legal obligations. The exclusion therefore prejudiced the Board not only on liability issues but also on the jury's assessment of punitive damages and the character of the Board's conduct.

Appellate Case: 26-1112    Page: 33    Date Filed: 07/06/2026 Entry ID: 5657649

Even if punitive damages were theoretically available, the nearly $3 million award cannot be reconciled with due process. The Board acted during an unprecedented public-health emergency, relied on the governing legal standards then in effect, presented substantial evidence supporting its operational decisions, and later granted every previously denied religious accommodation when circumstances changed. App. 1-2; Exhibit 192. R.Doc. 365, 182:21-24. App. 951; R.Doc. 124-1, 146:22-148:24. App. 1510; R.Doc. 130. App. 1650-1653; R.Doc. 131-3. App. 8186; R.Doc. 364, 133:13-21. App. 8176; R.Doc. 364, 123:18-23. App. 8226; R.Doc. 364, 173:9-15. App. 8238; R.Doc. 364, 185:9-18. App. 8241; R.Doc. 364, 188:15-23. App. 8247; R.Doc. 364, 194:5-19. App. 8260; R.Doc. 364, 207:23-25. App. 8299-8305; R.Doc. 364, 246:15-252:9. App. 8340-8342; R.Doc. 364, 287:5-289:19. App. 8344-8345; R.Doc. 364, 291:6-292:17. App. 8384; R.Doc. 365, 28:1-22. App. 8430-8431; R.Doc. 365, 74:23-75:12. App. 8467; R.Doc. 365, 111:3-7. App. 8539-8540; R.Doc. 365, 183:4-184:6. App. 8541; R.Doc. 365, 185:6-11. App. 8546-8549; R.Doc. 365, 190:11-193:17. App. 8582; R.Doc. 365, 226:15-22. App. 8607; R.Doc. 365, 251:5-13. App. 8668-8669; R.Doc. 365, 312:21-313:4. In the absence of evidence of intentional discrimination, evil motive, or reckless indifference, the punitive award is constitutionally excessive and should be vacated.

Appellate Case: 26-1112    Page: 34    Date Filed: 07/06/2026 Entry ID: 5657649

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in the Board's Opening Brief, the judgment should be reversed. The Court should direct entry of judgment in the Board's favor on Appellees' claims. Alternatively, the Court should vacate the judgment and remand for a new trial, together with such further proceedings as this Court deems appropriate.

Respectfully submitted,

**MICKES O'TOOLE, LLC**

By:  /s/ *Joshua E. Douglass*
Vincent D. Reese, #49576
vreese@mickesotoole.com
Joshua E. Douglass, #53179
jdouglass@mickesotoole.com
Ashley M. Wicks, #75808
awicks@mickesotoole.com
12412 Powerscourt Drive, Suite 200
St. Louis, Missouri 63131
Telephone: (314) 878-5600
Facsimile: (314) 878-5607

*Attorneys for Appellant-Defendant-Board of Education of the City of St. Louis*

35

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 2, 2026, a hard copy of the foregoing was delivered to the Clerk of the court for the United States Court of Appeals for the Eighth Circuit, and that a copy of the foregoing was electronically mailed to all participants in the case.

<u>/s/ *Joshua E. Douglass*</u>

Appellate Case: 26-1112    Page: 36    Date Filed: 07/06/2026 Entry ID: 5657649

# CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the foregoing Reply complies with the type-volume requirements FED.R.APP. P. 32(a)(7)(B)(1) because it contains 6,267 words in the brief, excluding the caption, Table of Contents, Table of Authorities, signature block, Certificate of Service, and this Certificate of Compliance. The undersigned further certifies that the foregoing Reply of Appellant complies with the typeface and type-style requirements of FED.R.APP. P. 32(a)(5)(A), 32(a)(5), and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in fourteen (14) point Times New Roman font. The undersigned further certifies that the electronic version of this Appellant Reply Brief filed with the Court complies with this Court's local Rule 25A because it has been submitted in Portable Document Format (PDF), which was generated by printing to PDF from the original word processing file so that the electronic version may be searched and copied.

/s/     Joshua E. Douglass

Appellate Case: 26-1112     Page: 37     Date Filed: 07/06/2026 Entry ID: 5657649